Carroll
No. 94-044

GUY S. SIMPKINS

v.

ROBERT M. SNOW, JR. & *a.*

July 14, 1995

736

*Kathleen A. Sternenberg,* of Manchester, by brief and orally, for the plaintiff.

*Wayne C. Beyer & Associates, P.C.,* of Manchester. (*Wayne C. Beyer* on the brief and orally), for the defendants.

THAYER, J. The plaintiff, Guy S. Simpkins, brought a defamation action against the defendants, the Town of Bartlett (town) and Robert M. Snow, Jr., the police chief for the town at the time in question. A jury verdict was entered in favor of the defendants. The plaintiff appeals, arguing that the Superior Court (*Mohl,* J.) erred by excluding the testimony of a witness regarding the statements allegedly made by Chief Snow, and that the court erred in admitting evidence that had been seized pursuant to an invalid search warrant. We affirm.

In May 1989, the plaintiff was working as a bartender at the Red Parka Pub in Bartlett. The defamation claim stems from a conversation between Snow and Robert Wentworth, a manager at the

Red Parka Pub. The plaintiff alleges that Chief Snow informed Wentworth that the plaintiff was a drug dealer, was selling drugs at the restaurant, and that Wentworth should take care of the situation. These statements form the basis of the plaintiff's defamation action.

Prior to trial, the defense moved *in limine* to exclude the testimony of Richard Walter. Walter was to testify that both he and Wentworth were at a manager's meeting at the Red Parka Pub on May 13, 1989, that Wentworth was called from the meeting by Chief Snow, and that when Wentworth returned he told all the people at the meeting that Chief Snow had informed him that "Guy Simpkins was a drug dealer and that Mr. Wentworth should be aware of the problem and take care of it." The defense objected to the testimony arguing that it was inadmissible hearsay. The court agreed but admitted the testimony for the limited purposes of showing damages and publication. It is this limitation that forms the basis of the plaintiff's first issue on appeal.

"Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement." *State v. Favreau,* 134 N.H. 336, 339, 592 A.2d 1136, 1137 (1991); N.H. R. Ev. 801(c). Hearsay is inadmissible unless it falls within one of the exceptions provided in the rules of evidence. *Favreau,* 134 N.H. at 339, 592 A.2d at 1137. Whether a statement constitutes hearsay and whether it is subject to an exception are questions for the trial court, and we will not disturb its ruling unless it is clearly erroneous. *Id.* The plaintiff argues that Walter's statements were either: (1) not hearsay because they were not being admitted to show the truth of the matter asserted; or (2) hearsay, but subject to an exception.

■ The plaintiff correctly contends that where a statement has independent legal significance, it is not considered hearsay. 29 AM. JUR. 2D *Evidence* § 665, at 709 (1994); *see State v. W.J.T. Enterprises,* 136 N.H. 490, 494, 618 A.2d 806, 808 (1992). In a defamation action, the defamatory statement has independent legal significance and would not be deemed hearsay. 29 AM. JUR. 2D *Evidence* § 665, at 709. The statements in question, however, do not stand on the same footing as the defamatory statements allegedly made by Chief Snow. Walter testified as to what Wentworth said was the content of Chief Snow's statements. Wentworth's statements, therefore, would have no significance unless they were a true representation of his conversation with Snow. The plaintiff sought to introduce the statements to prove that the defamatory comments were made. Unless Wentworth's statements were true, they would not tend to prove that the defamation occurred. Accordingly, they were out-of-court statements offered to prove the truth of the matter asserted in the statements and constituted hearsay. N.H. R. Ev. 801(c). While an individual who overheard the conversation between Snow and Wentworth could

testify to its contents, *see Emery v. Woodward,* 96 N.H. 61, 61–62, 69 A.2d 865, 866–67 (1949), Walter, whose knowledge of the conversation was indirect, could not so testify. The trial court correctly concluded that the statements were hearsay.

The plaintiff also argues that even if the statements were hearsay, they were subject to at least one exception. The plaintiff relies on the state of mind exception, N.H. R. Ev. 803(3); the present sense impression exception, N.H. R. Ev. 803(1); the excited utterance exception, N.H. R. Ev. 803(2); and the catch-all exception, N.H. R. Ev. 803(24). We will discuss these in the order they were presented by the plaintiff.

■ Hearsay may be admitted if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." N.H. R. Ev. 803(3). This is often referred to as the state of mind exception. The testimony in this case does not fall within this exception. Wentworth's statements to Walter were "statement[s] of memory or belief" as to what Snow had allegedly stated. They were a narrative of the prior conversation. " 'Narratives of past facts or expressions of one's understanding of what has happened do not show [present] intention and are incompetent hearsay.' " *Ibey v. Ibey,* 93 N.H. 434, 437, 43 A.2d 157, 159 (1945), quoted in N.H. R. Ev. 803 Reporter's Notes. The trial court did not err in refusing to admit the hearsay under this exception.

■ The plaintiff next argues that the statements were present sense impressions. Rule 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" constitutes an exception to the hearsay rule. The trial court ruled that the statements did not satisfy the contemporaneity requirement of this exception. The record supports the trial court's finding that the statements were not contemporaneous with the prior conversation. To constitute a "present sense impression, the statement must be essentially contemporaneous with the event." N.H. R. Ev. 803 Reporter's Notes. One reason for this requirement is to assure that there is little time for calculated misstatement. *Id.* In this case, Wentworth and Chief Snow spoke for approximately ten minutes. When the alleged defamatory statements were made is unknown, but they were made prior to Wentworth's return to the meeting. Some lapse of time occurred between Wentworth hearing the statements and relating them to the people at the meeting, giving him time to reflect on the event. We cannot say, therefore, that the trial court's

determination that the statements did not satisfy the contemporaneity requirement was clearly erroneous.

■ The plaintiff also argues that these statements constituted excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.H. R. Ev. 803(2). No evidence indicates that Wentworth was under any stress when he made the statements or that he was particularly startled by his conversation with Chief Snow. Walter testified that Wentworth came back into the room and stated that Snow had told him "that he should be aware of the scheduling of Guy because he was under investigation and was selling pot out of the bar and that he was going to bust him." He further testified that the people at the meeting only discussed Wentworth's statements for a minute or two and then "it was kind of brushed off." Some level of excitement or nervousness is a prerequisite to admission under this rule. *See State v. Coppola,* 130 N.H. 148, 153, 536 A.2d 1236, 1240 (1987), *rev'd on other grounds sub nom. Coppola v. Powell,* 878 F.2d 1562 (1st Cir.), *cert. denied,* 493 U.S. 969 (1989). The trial court's ruling that the statements did not qualify as excited utterances is not clearly erroneous. *Cf. State v. Woods,* 130 N.H. 721, 727, 546 A.2d 1073, 1076–77 (1988).

■ Finally, the plaintiff argues that the testimony should have been admitted under the "catch-all" exception to the hearsay rule. N.H. R. Ev. 803(24). To qualify under this rule, "the statement [must be] more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." N.H. R. Ev. 803(24)(B). The testimony was offered to prove the content of the conversation between Wentworth and Chief Snow. Both of these men testified as to the content of their conversation on the day in question. The testimony of the actual participants in the conversation is more probative as to its contents than is Walter's testimony regarding Wentworth's recount of the conversation. The fact that the testimony of Snow and Wentworth did not support the plaintiff's position does not mean that it was not probative or that Walter's contradictory statements would have been more probative. The trial court therefore did not err in limiting the use of this testimony.

■ The second question on appeal involves the admission of drugs and money seized pursuant to a search warrant from the plaintiff's home. The search was held in the plaintiff's prior criminal trial to be unconstitutional, and the evidence seized was suppressed. The plaintiff argues that admission of that evidence in his civil trial violated his constitutional protections. The plaintiff does not raise a

State constitutional claim, so we examine only whether the admission of the evidence violated his federal constitutional rights. *See State v. Ramos,* 131 N.H. 276, 281–82, 553 A.2d 275, 279 (1988). Assuming, *arguendo,* that the warrant in question would be invalid under the Federal Constitution, *but see United States v. Leon,* 468 U.S. 897 (1984), we find that the trial court's admission of the evidence was proper.

The United States Supreme Court has stated that as a general rule, evidence seized in violation of constitutional protections is not excluded in civil cases. *United States v. Janis,* 428 U.S. 433, 447 (1976). Such exclusion will only occur if it would have a significant deterrent value. *Tirado v. C.I.R.,* 689 F.2d 307, 313–14 (2d Cir. 1982), *cert. denied,* 460 U.S. 1014 (1983). In this case, the deterrent value would be minimal at best. While it is true that Chief Snow participated in the search that was later ruled invalid, the evidence was neither used offensively against the plaintiff, nor used in a quasi-criminal proceeding by the government agency that conducted the illegal search. *Cf. One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702 (1965); *Pizzarello v. United States,* 408 F.2d 579, 586 (2d Cir.), *cert. denied,* 396 U.S. 986 (1969); *Hendron v. City of Ithaca,* 349 N.Y.S.2d 227, 231 (App. Div. 1973), *appeal dismissed,* 324 N.E.2d 555 (N.Y. 1974). At the time the illegal search occurred, it is unlikely that Chief Snow contemplated the use of the evidence in defense of a later defamation action. We find that application of the exclusionary rule in this context would have no significant deterrent value and would therefore be inappropriate.

■■ The plaintiff lastly argues that this evidence should have been excluded because it was irrelevant and highly prejudicial. We disagree. At trial, Chief Snow argued, *inter alia,* that the alleged statements were not defamatory either because they were true or because he had a qualified privilege to make such statements in the course of his investigation. A statement is not actionable if it is substantially true. *Chagnon v. Union-Leader Co.,* 103 N.H. 426, 437, 174 A.2d 825, 832 (1961), *cert. denied,* 369 U.S. 830 (1962). Additionally, a conditional privilege exists "if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth," provided that the statements are not made with actual malice. *Id.* at 438, 174 A.2d at 833. The evidence, therefore, was relevant because it tended to show that the plaintiff was involved with illegal drugs. Regardless of whether the evidence seized would be sufficient to support a criminal conviction for drug trafficking, it could support a civil finding that the statements made by Chief Snow were either substantially true or a conditional privilege existed.

Nor was the evidence inadmissible as unduly prejudicial. Otherwise admissible evidence will only be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 403. It is a matter of judicial discretion whether to admit relevant evidence after weighing its probative value against the danger of unfair prejudice. *State v. Hotchkiss,* 129 N.H. 260, 264, 525 A.2d 270, 272 (1987). "To constitute an abuse of discretion reversible on appeal, the [plaintiff] must demonstrate that the ruling of the trial court was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted). That the evidence was prejudicial to the plaintiff's case is undisputed. This does not mean, however, that the evidence was inadmissible. "[T]he prejudice required to predicate reversible error is an undue tendency to induce a decision . . . on some improper basis, commonly one that is emotionally charged." *State v. Cochran,* 132 N.H. 670, 672, 569 A.2d 756, 757 (1990) (citations omitted). The fact that the evidence supported the defendants' position does not compel a finding that it was unduly prejudicial. *Id.* The plaintiff has failed to show that the trial court's ruling "was clearly untenable or unreasonable to the prejudice of his case." *Hotchkiss,* 129 N.H. at 264, 525 A.2d at 272 (quotation omitted).

*Affirmed.*

All concurred.