Snow v. Isaac                          CV-98-180-SD   09/30/98
            UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


<u>Robert M. Snow</u>

        v.                            Civil No. 98-180-SD

<u>Andrew L. Isaac</u>


                          O R D E R

    In this diversity action, plaintiff Robert Snow claims that
defendant Andrew Isaac wrongfully pursued a civil action against
him without probable cause and with malice.  Currently before the
court is defendant's motion for summary judgment, to which
plaintiff objects.  For the reasons that follow, this court
grants defendant's motion.


                        <u>Background</u>

    This case arises from a previous action in this court in
which plaintiff Snow was named as a defendant.  <u>Simpkins v. Snow</u>,
Civ. No. 98-108-B.  To understand the conflict between the two
parties in this case, a brief history of prior action against
Snow is helpful.

    Snow, as the Chief of Police of Bartlett, New Hampshire, was
involved in the arrest and prosecution of Guy S. Simpkins for the

possession of marijuana. Snow obtained a search warrant for Simpkins' residence based upon a confidential informant's information that Simpkins was involved in illegal drug activities. At a hearing on a motion to suppress, the Carroll County (New Hampshire) Superior Court ruled that the search warrant was defective because Snow had failed to identify and establish the credibility of the confidential informant. At that time Snow would not reveal the identity of his informant, and the court suppressed all evidence obtained as a result of the search warrant. The court ultimately dismissed the state's case against Simpkins for failure to prosecute. After the criminal case was dismissed, Simpkins sued Snow, unsuccessfully, in state court for defamation. See also Simpkins v. Snow, 139 N.H. 735, 661 A.2d 772 (1995). During that trial, Snow testified that Roy Olive had been his confidential informant in the Simpkins investigation and that William Donatelli had participated as a third party in a controlled purchase of drugs between Olive and Simpkins. At trial Donatelli denied any participation in this alleged purchase of drugs from Simpkins.

Based on facts associated with the defamation action and a subsequent affidavit derived from Olive, Simpkins proceeded against Snow in this court, with defendant Isaac appearing as his attorney. In his affidavit, made in November 1994, Olive denied

2

any participation as a confidential informant. Based on that statement, Isaac petitioned the attorney general to release to him (on behalf of Olive) any records regarding Olive's involvement as a police informant. (Contrary to his affidavit, Olive admitted being Snow's police informant both before and after his affidavit in telephone interviews with investigators.) Simpkins alleged that his federal civil rights were violated by Snow, claiming illegal search and seizure, false arrest, and malicious prosecution actionable under 42 U.S.C. § 1983. Simpkins also alleged state claims against Snow of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent supervision, and malicious prosecution. After considering the defamation action brought by Simpkins against Snow in state court, Judge Barbadoro resolved the federal action in favor of Snow, holding it to be barred by the doctrine of res judicata. Simpkins, supra, Civ. No. 98-108-B, Order of May 13, 1996. See also Simpkins, supra, 139 N.H. 735, 661 A.2d 772.

## Discussion

### 1. Standard of Review

The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Accordingly, at this stage of the proceedings, the court does not weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue of fact for trial. See Stone & Michaud Ins. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The substantive law identifies which facts are material so that "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" Caputo v. Boston Edison Co., 924 F.2d 11, 12-13 (1st Cir. 1991) (quoting Anderson, supra, 477 U.S. at 248).

The party seeking summary judgment bears the initial burden of establishing the lack of genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). As a result, the court must view the entire record in the light most favorable to the non-moving party, "'indulging all reasonable inferences in that party's favor.'" Mesnick v.

4

<u>General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)). However, once a defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson, supra</u>, 477 U.S. at 256.

## 1. Malicious Prosecution

According to New Hampshire law, a successful action for malicious civil prosecution requires proof of four elements: the plaintiff was subjected to a civil action instituted by the defendant, the defendant acted without probable cause, the defendant acted with malice, and the proceedings terminated in favor of the plaintiff. <u>See</u> <u>ERG, Inc. v. Barnes</u>, 137 N.H. 186, 190, 624 A.2d 555, 558 (1993).

The first element of this claim, that plaintiff was subjected to a civil action initiated by defendant, is undisputed. Plaintiff has also established that a prior action terminated in his favor, despite defendant's contention to the contrary. A civil proceeding terminates in a plaintiff's favor when the court passes on the merits of the claim establishing the plaintiff's lack of liability or when the proceedings are

5

terminated by the defendant in such a manner as to imply that the plaintiff was successful in defeating the claim.  See Robinson v. Fimbel Door Company, 113 N.H. 348, 350-51, 306 A.2d 768, 769-70 (1973) (quoting 1 HARPER AND JAMES, LAW OF TORTS §§ 4.1, 4.4 (1956)).

In the present case, there is no ambiguity as to who prevailed in the prior action against the plaintiff.  Because a defamation action based on similar facts between the same parties had been tried in state court, and Snow was found not liable, Judge Barbadoro determined that the action in federal court against Snow should be barred by the doctrine of res judicata. See Simpkins, supra, Civ. No. 98-108-B.  Thus the federal court adopted the prior ruling by the state court, which *was* a final determination on the merits of the case favorable to Snow.

A plaintiff also must establish that in a prior civil proceeding the defendant acted without probable cause.  Probable cause will be lacking if the initiator knows the facts supporting his or her case are false and his or her claim is based on false testimony.  See RESTATEMENT (SECOND) OF TORTS § 675 cmt. d (1977).  On the other hand, one who takes an active part in litigation against another has probable cause for doing so "if he reasonably believes in the existence of the facts upon which the claim is based, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law . . .

6

." Id. § 675.  Consequently, someone who initiates a civil action does not need the same degree of certainty as to relevant facts required of a prosecutor in a criminal proceeding to establish that his or her litigation activities were based upon probable cause.  See id. § 675 cmt. d.  Essentially, probable cause for the initiation of a civil proceeding will be established if "the claimant reasonably believe[s] that there is a sound chance that his claim may be held legally valid upon adjudication."  Id. § 675 cmt. e.

Plaintiff contends that defendant lacked probable cause because he should have known both that the testimony he relied upon in support of his case was false and that the case would be barred by the doctrine of res judicata.  To support his contention that Isaac knowingly relied upon false testimony, plaintiff now relies upon the contradictory statements made by the very witness who gave this testimony, Olive.  As the RESTATEMENT illustrates, if there is uncertainty as to the existence of certain facts, that does not mean that the initiator of a civil action acted without probable cause.  See id. § 675 cmt. d.  Only if the initiator *knows* that facts supporting his or her claims are false can the court determine that the initiator lacked probable cause in bringing forth his or her claims.  See id.  Plaintiff's only evidence that defendant knew Olive's

7

testimony was false is later statements made by the same unreliable witness.

Additionally, just because a previous action in state court had been brought against this plaintiff by Isaac's client does not mean that Isaac did not have a reasonable basis for bringing an action against Snow in federal court. For instance, there are exceptions to the doctrine of res judicata; as long as Isaac had a reasonable argument for bringing this case forward, such as the addition of new evidence with Olive's affidavit, then Isaac did not lack probable cause, even though his action against Snow was unsuccessful. Furthermore, even if probable cause could be found from the facts presented by plaintiff, he still has not presented sufficient evidence to prove the element of malice for this cause of action.

Based upon his conclusion that defendant acted without probable cause, plaintiff contends that defendant acted with malice in the prior action against Snow. Despite this assertion by plaintiff, in the case of an attorney, "even if [an attorney] has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim." Id. § 674 cmt. d; see also ERG, Inc., supra, 137 N.H. at 190, 624 A.2d at 558. Additionally, an attorney is not

8

required to prejudge his or her client's claim, even if he or she is fully aware that his chances of success are relatively slight. See ERG, Inc., 137 N.H. at 190, 624 A.2d at 558 (citing RESTATEMENT, supra, § 674 cmt. d). After counsel has advised the client as to the likelihood of success regarding the case, if the client insists upon going forward, it is the attorney's responsibility to present his client's case to the court for adjudication. Id. To prove malice, plaintiff must introduce evidence that defendant harbored some improper motive.

In the instant case, Snow is unable to point to any direct evidence of Isaac's improper motive. Snow nonetheless argues that Isaac's reliance on Olive's testimony establishes malice. It is true that if an initiator of an action *knows* that his or her claim is based on false testimony or that the only way the action will terminate in his or her favor is if the court or the jury is misled in some way, then this is evidence that the initiator acted with malice. See RESTATEMENT, supra, § 676 cmt. c. Here, plaintiff attempts to argue that because Isaac knew Olive had recanted statements made in his affidavit, then Isaac knew Olive's testimony was false. Even if Isaac knew that Olive had recanted statements in his affidavit, this alleged fact alone would still not support the proposition that Isaac acted with malice, because there is no way of *knowing* which of Olive's

9

inconsistent accounts is true.  Cf. ERG, Inc., supra, 137 N.H. at 190-91, 624 A.2d at 558 (to support claim for malicious prosecution court ruled that plaintiff could not rely on conclusions that attorney knew or should have known his client was not entitled to commission sought in previous lawsuit against plaintiff, but instead needed to plead specific facts to support finding that defendant acted without probable cause and with malice.)

Certainly plaintiff here does not suggest that attorneys should be subject to liability for malicious prosecution every time witnesses change their testimony after a litigation has already begun.  Attorneys are charged with a duty to represent their clients to the best of their abilities and should not fear litigation against themselves just because they performed their duties loyally to their clients.  Only if an attorney goes so far as to pursue a civil action for his or her client for an improper purpose, such as to harass his or her opponent, can an action for malicious prosecution survive.  Cf. Aranson v. Schroeder, 140 N.H. 359, 366-67, 671 A.2d 1023, 1028-29 (1996) (holding attorney would be liable for malicious defense if he or she went beyond role of counselor and intentionally initiated defensive action that attorney knew lacked credibility for sole purpose of harassing plaintiff).  Plaintiff in this action has not offered

any credible evidence to show that Isaac *knew* he was relying on false testimony or to show any other improper purpose on Isaac's part. Thus, even though the facts are viewed in the light most favorable to the plaintiff, the court still does not find any evidence of malice.

<u>Conclusion</u>

For the abovementioned reasons, defendant's motion for summary judgment (document 6) must be and herewith is granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 30, 1998
cc:  Thomas J. Gleason, Esq.
     Russell F. Hilliard, Esq.

11