Strafford
No. 96-648

THE STATE OF NEW HAMPSHIRE

v.

ANTONIO MARTI

June 21, 1999

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, and *Risa Evans*, of Concord (*Mr. Bisson* on the brief, and *Ms. Evans* orally), for the defendant.

BROCK, C.J. The defendant, Antonio Marti, was convicted in Superior Court (*Fitzgerald*, J.) on 106 indictments for aggravated felonious sexual assault. *See* RSA 632-A:2 (1986 & Supp. 1991) (amended 1992, 1994, 1995, 1997, 1998). We reverse in part, vacate in part, and remand.

In 1994, the defendant was tried on three indictments for aggravated felonious sexual assault, each alleging a separate act of anal intercourse with his daughter. *See State v. Marti*, 140 N.H. 692, 693, 672 A.2d 709, 710 (1996) (*Marti I*). The first indictment alleged an act of anal intercourse when the victim was between the ages of ten and thirteen (first indictment). *See* RSA 632-A:2, XI. The second indictment alleged an act of anal intercourse when the victim was between the ages of thirteen and sixteen. *See* RSA 632-A:2, X. The third indictment contained two counts, both alleging an act of anal intercourse when the victim was sixteen (two-count indictment). *See* RSA 632-A:2, I, :2, X-a. A jury convicted the defendant on all three indictments, and the trial court sentenced him to twenty-two and one-half to forty-five years in prison. We reversed the convictions, concluding that the trial court had improperly admitted evidence of hundreds of prior sexual assaults, many identical to the charged crimes, in violation of New Hampshire Rule of Evidence 404(b). *See Marti I*, 140 N.H. at 695-96, 672 A.2d at 711. We remanded the case for a new trial.

Subsequently, the same prosecutor who had tried the defendant at the first trial stated, according to the defendant, that if we would not

permit him to enter into evidence the uncharged conduct, he would charge it. He then *nol prossed* the first indictment, and in its place obtained 104 new indictments for aggravated felonious sexual assault. Each of the new indictments alleged, in nearly identical language to the first indictment, a single act of anal intercourse per week when the victim was ten and eleven years old.

The State moved to consolidate the new indictments with the two indictments remaining from the first trial. The defendant moved to dismiss or quash the new indictments, arguing in part that their prosecution constituted prosecutorial vindictiveness. The defendant argued that the prosecutor's remark that he would charge the defendant's conduct if he could not introduce it demonstrated actual vindictiveness toward the defendant for exercising his right of appeal. Even absent a showing of actual vindictiveness, however, the defendant argued that the circumstances of the case gave rise to a presumption of vindictiveness warranting dismissal of the new indictments. The Superior Court (*Mohl*, J.) made a conclusory finding that there was no evidence of prosecutorial vindictiveness, and denied the defendant's motion to dismiss but granted the State's motion to consolidate.

Prior to trial, the defendant sought to exclude any evidence of uncharged sexual contact between the defendant and the victim under New Hampshire Rule of Evidence 404(b). The defendant also moved to dismiss or quash the two-count indictment as duplicitous. The Superior Court (*Fitzgerald*, J.) denied the motion to dismiss but granted the defendant's motion *in limine* to exclude evidence of any sexual contact that occurred prior to the time periods charged in the indictments.

In his opening statement, the prosecutor stated that when the victim was ten and eleven years old, the defendant had anal intercourse with her at least weekly, but sometimes more than once a week. The defendant objected to the reference to abuse that occurred more than once per week, arguing that the reference was to inadmissible prior bad acts. The court indicated that it would deal with the issue when the State offered the evidence. At trial, the State elicited testimony from the victim that during the time period covered by the 104 indictments, the defendant had engaged in anal intercourse with her at least once a week, and sometimes more than once a week. She also testified that the anal intercourse continued when she was between the ages of twelve and fifteen. The court overruled the defendant's objections.

The jury convicted the defendant on all 106 indictments, and the court sentenced him to forty-five to ninety years in prison. The

defendant appeals, arguing that the trial court erred by: (1) denying his motion to dismiss the 104 indictments for prosecutorial vindictiveness in violation of his due process rights under both the State and Federal Constitutions; (2) denying his motion to dismiss the two-count indictment for duplicitousness in violation of Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution; (3) improperly stating the law and commenting on the evidence in its charge to the jury; and (4) improperly admitting the evidence of uncharged bad acts in violation of New Hampshire Rule of Evidence 404(b). We reverse on the issue of prosecutorial vindictiveness and address the second and third arguments as they may arise on remand. *See State v. Frost*, 141 N.H. 493, 498, 686 A.2d 1172, 1176 (1996) (in interest of judicial economy, court will address issues likely to arise on remand).

We analyze the defendant's constitutional claims first under the New Hampshire Constitution, "referenc[ing] . . . decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis." *State v. Cannuli*, 143 N.H. 149, 151, 722 A.2d 450, 451 (1998) (quotation omitted). Because Part I, Article 15 of the New Hampshire Constitution is at least as protective of the defendant's rights as the Due Process Clause of the Fourteenth Amendment, *cf. Knowles v. Warden, N.H. State Prison*, 140 N.H. 387, 389, 666 A.2d 972, 975 (1995), and as the Sixth Amendment, *see State v. Settle*, 132 N.H. 626, 630, 570 A.2d 895, 897 (1990), we do not engage in a separate federal analysis, *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

*I. Prosecutorial Vindictiveness*

The defendant argues first that the State's response to our ruling in *Marti I* in bringing 104 additional indictments raises a presumption of vindictiveness in violation of his due process rights. Because the State failed to rebut this presumption, the defendant contends, the trial court wrongly denied his motion to dismiss. We agree.

"[A] prosecutor may not exercise his or her discretion to bring a criminal charge with the aim of punishing a lawful exercise of the right to appeal." *State v. Gallant*, 133 N.H. 138, 148, 574 A.2d 385, 392 (1990) (decided under the Federal Constitution). Due process demands that "any increased . . . charge imposed on retrial not be the result of . . . prosecutorial vindictiveness." *State v. Goding*, 128 N.H. 267, 271, 513 A.2d 325, 328 (1986) (decided under

the Federal Constitution). However, because "[m]otives are complex and difficult to prove," *United States v. Goodwin*, 457 U.S. 368, 373 (1982), and because "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal," *Blackledge v. Perry*, 417 U.S. 21, 28 (1974) (quotation omitted), we do not require proof of actual vindictiveness on the part of the prosecutor when the prosecutor's charging decision raises "a realistic likelihood of vindictiveness," *Goding*, 128 N.H. at 272, 513 A.2d at 329 (quotations omitted). In these situations, we presume vindictiveness and require the State to rebut that presumption by proving that the charging decision was not motivated by vindictiveness. *See id.*

■ In *Goding*, 128 N.H. at 272-73, 513 A.2d at 329, we determined that a prosecutor's decision to charge a defendant at a *de novo* trial with a felony after that defendant had been convicted of a misdemeanor raised a presumption of vindictiveness. We noted that a defendant "is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.* at 272, 513 A.2d at 329 (quotation omitted). Likewise, we find in this case that the prosecutor's decision to bring 104 additional indictments for aggravated felonious sexual assault after the defendant had exercised his right to appeal the original conviction on three indictments raises a presumption of vindictiveness. As in *Goding*, the State substituted the additional charges for the original charge after the defendant exercised his right to appeal, thereby subjecting him to a significantly increased sentence. Hence, the circumstances demonstrate a "realistic likelihood of vindictiveness," and the burden is on the State to show that the increased charges are not the product of vindictiveness. *See id.*

The State argues that *State v. Novosel*, 120 N.H. 176, 181, 412 A.2d 739, 743 (1980), stands for the proposition that a presumption of vindictiveness will not arise unless the prosecutor seeks a greater punishment after a retrial. Because the prosecutor in this case sought the same penalty that the defendant had received in the first trial, the State contends that a presumption of vindictiveness is not warranted.

In *Novosel*, we stated that "[p]rosecutorial vindictiveness . . . is present only if the prosecution ha[s] upped the ante during a retrial and if a harsher sentence *is thereby imposed.*" *Id.* (emphasis added) (quotations omitted). We never stated, however, that the prosecutor

must *seek* a harsher sentence before a presumption of vindictiveness will arise. Ordinarily, a trial court is not bound by the prosecutor's recommendations in imposing a sentence. *State v. McLaughlin*, 126 N.H. 98, 100, 489 A.2d 114, 116 (1985). Indeed, the trial judge in this case stated that he was not bound by the defendant's prior sentence, in part because of the additional charges. Accordingly, the actual punishment that a prosecutor purports to seek ordinarily will not diminish a realistic likelihood of vindictiveness that is otherwise demonstrated by the circumstances of a case. Thus, we conclude that in this case, the prosecutor's charging decision that *subjected* the defendant to a significantly increased sentence was sufficient to raise a presumption of vindictiveness, notwithstanding the sentence that the prosecutor sought.

The State further argues that a presumption of vindictiveness is not warranted when the objective circumstances of the case indicate that the prosecutor's action is at least equally attributable to valid prosecutorial concerns. Rather than punishing the defendant for appealing, the State asserts that the circumstances of this case demonstrate that the prosecutor was motivated by a desire to assure that the defendant was held fully accountable for his actions given our evidentiary ruling. We decline, however, to adopt the standard advocated by the State. As stated above, a presumption of prosecutorial vindictiveness arises when the prosecutor's conduct demonstrates a realistic likelihood of vindictiveness. Because we have determined that the circumstances of this case demonstrate a realistic likelihood of vindictiveness, the burden is on the State to show that the "objective circumstances of the case" indicate that the prosecutor's charging decision was not the product of vindictiveness. *See Goding*, 128 N.H. at 272, 513 A.2d at 329.

We have never articulated the standard that the State must meet to rebut a presumption of prosecutorial vindictiveness. *Cf. State v. Hurlburt*, 135 N.H. 143, 147, 603 A.2d 493, 495 (1991) (reciting standard applicable for judicial vindictiveness under Federal Constitution), *cert. denied*, 503 U.S. 1008 (1992). In *Goding*, 128 N.H. at 272-73, 513 A.2d at 330, however, we concluded that the State had sufficiently rebutted the presumption. The State in *Goding* had initially charged the defendant with DWI-second offense, but had substituted for that charge a charge of DWI-first offense because the prosecutor lacked the required proof of the prior offense. *Id.* at 269, 513 A.2d at 327. After the defendant was convicted and exercised his right to a *de novo* trial in the superior court, the State *nol prossed* the district court complaint and filed an information charging DWI-second offense. *Id.* We concluded that the State had

rebutted the presumption of vindictiveness by showing that: (1) DWI-second offense was the initial charge; (2) the defendant had prepared initially for that charge; (3) "there was no evidence of prosecutorial statements indicating vindictiveness"; and (4) "it was only a matter of fortuity" that the defendant had not been tried initially for the more serious offense. *Id.* at 272-73, 513 A.2d at 330. Hence, the State's inability initially to charge the more serious offense despite its efforts to do so contributed to our conclusion that the State had successfully rebutted the presumption of vindictiveness. We noted, however, that "absent such exceptional circumstances," the substitution of the more serious charge would have violated the defendant's due process rights. *Id.* at 273, 513 A.2d at 330.

We conclude that to rebut a presumption of prosecutorial vindictiveness, the State, as in *Goding,* must show objective reasons for the new charges that were not present when the prosecutor initially charged the defendant. *See id.* Other courts have established similar standards. *See Goodwin,* 457 U.S. at 376 n.8 (presumption "overcome by objective evidence justifying the prosecutor's action"); *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir.) (prosecutor bears burden to rebut the presumption by showing objective reasons not present when initial charge was brought), cert. denied, 484 U.S. 944 (1987); *United States v. Andrews,* 633 F.2d 449, 456 & n.10 (6th Cir. 1980) (en banc) ("only objective, on-the-record explanations" suffice, such as the discovery of new evidence or previous legal impossibility), *cert. denied,* 450 U.S. 927 (1981); *cf. Blackledge,* 417 U.S. at 29 n.7 (stating that the case would have been different if the State had shown that it was impossible to proceed initially with the more serious charge). This standard adequately balances the defendant's interest in appealing "without apprehension that the State will retaliate" at a retrial, *Goding,* 128 N.H. at 272, 513 A.2d at 329 (quotation omitted), and the State's interest in exercising its prosecutorial discretion when the circumstances of the case have changed.

In answering the motion to dismiss in this case, the prosecutor asserted that after we decided *Marti I,* he determined for the first time that the victim was being literal, and not figurative, when she stated that the sexual abuse was a weekly event. He also asserted that in bringing the additional charges he was merely attempting to comply with our ruling in *Marti I.* Moreover, to dispel any inference of vindictiveness, the prosecutor stated that he would not seek a greater sentence than the defendant had received in the first trial. We find these reasons insufficient to rebut the presumption of vindictiveness under the circumstances of this case.

Although the prosecutor asserted that he misunderstood the nature of the victim's story when he initially charged the defendant, he acknowledged that in charging the defendant with the additional 104 counts, he relied on information he had known prior to the first trial. Further, as previously discussed, the prosecutor's recommendations on sentencing are not binding upon the trial judge. Accordingly, the prosecutor failed to demonstrate objective reasons for pursuing the 104 indictments that were not present when he made his initial charging decision.

Because the circumstances of this case demonstrate a realistic likelihood of vindictiveness, and because the prosecutor failed to rebut the presumption of vindictiveness, the trial court improperly denied the defendant's motion to dismiss the new indictments. Accordingly, we reverse the trial court's order denying the defendant's motion to dismiss the additional 104 indictments, vacate the convictions on the remaining two indictments, and remand.

## II. Duplicitous Indictments

The defendant next argues that the second count of the two-count indictment (second count) was duplicitous. The defendant notes that in *Marti I*, 140 N.H. at 693, 672 A.2d at 710, we described that count as alleging a violation of both RSA 632-A:2, X-a and RSA 632-A:2, III. Thus, the defendant argues that the indictment wrongly charged two crimes in one count. In *Marti I*, this issue was not before us. Having considered the parties' arguments, we disagree that *Marti I* warrants a finding that the two-count indictment was duplicitous.

"An indictment is duplicitous when it charges two or more offenses in one count." *State v. Patch*, 135 N.H. 127, 128, 599 A.2d 1243, 1244 (1991). To pass constitutional muster, "the indictment must be specific enough to ensure notice to the defendant, assurance against double jeopardy, and the reliability of an unanimous jury verdict." *Id.* If the indictment could not reasonably be read to charge more than one offense, however, the indictment is not duplicitous. *See State v. Wright*, 126 N.H. 643, 646, 496 A.2d 702, 704 (1985).

We find that the second count could not reasonably be read to charge a violation of both RSA 632-A:2, X-a and RSA 632-A:2, III. RSA 632-A:2, X-a makes it felonious to engage in sexual penetration with another "[w]hen, except as between legally married spouses, the victim is 13 years of age or older and under 18 years of age and the actor is in a position of authority over the victim and uses this

authority to coerce the victim to submit." The second count charged that in 1990 the defendant

> DID KNOWINGLY ENGAGE IN SEXUAL PENETRA-
> TION WITH A VICTIM, OTHER THAN HIS LEGAL
> SPOUSE, WHO WAS THIRTEEN YEARS OF AGE OR
> OLDER AND UNDER EIGHTEEN YEARS OF AGE,
> AND BEING IN A POSITION OF AUTHORITY OVER
> THE VICTIM COERCED HER TO SUBMIT; IN THAT,
> ANTONIO MARTI ENGAGED IN ANAL INTER-
> COURSE WITH HIS DAUGHTER WHOSE DATE OF
> BIRTH IS JULY 21, 1974, BY SUBJECTING HER TO
> YEARS OF SEXUAL AND PHYSICAL ABUSE AS HER
> FATHER THEREBY FORCING HER TO SUBMIT.

Thus, the State alleged that the defendant: (1) engaged in anal intercourse; (2) with his daughter who was between the ages of thirteen and eighteen; and (3) used his authority as her father to coerce her to submit by having subjected her to prior sexual and physical abuse. These allegations establish a violation of RSA 632-A:2, X-a.

In contrast, RSA 632-A:2, III makes it felonious to engage in sexual penetration with another "[w]hen the actor coerces the victim to submit by threatening to use physical violence or superior physical strength on the victim, and the victim believes that the actor has the present ability to execute these threats." The State rightly contends that the second count fails to allege that the defendant threatened the victim, or that she believed that he had the ability to carry out the threats. Accordingly, the State alleged facts in the second count sufficient to meet the requirements of RSA 632-A:2, X-a, but not RSA 632-A:2, III, and thus the indictment was not duplicitous. To the extent that *Marti I* suggests otherwise, it is dicta and does not control.

### III. Improper Jury Charge

The defendant next argues that the trial court made an incorrect statement of law and an impermissible comment on the evidence in its charge to the jury. We disagree.

In the course of instructing the jury, the trial court stated that

> [w]ith respect to each of the[] [charged] offenses corrob-
> oration of the testimony of the victim is not required. That
> means if you find the victim to be credible in light of all of
> the evidence introduced during the course of the trial, that

testimony alone is sufficient to establish the State's case – burden of proof beyond a reasonable doubt.

The defendant argues that while corroboration of a victim's testimony is not required to prove the State's case in aggravated felonious sexual assault cases, *see* RSA 632-A:6, I (1996), a jury may properly consider the lack of corroboration. Thus, the defendant asserts that the instruction, which implied that the jury could not consider the lack of corroboration if they found the victim to be credible, erroneously diverted the jury from a reasonable line of factual analysis, and constituted a finding of fact on the effect of the lack of corroboration. The defendant's error lies in the implication he draws from the instruction.

"We have long recognized the rule that a claim of an erroneous jury charge must be evaluated by reading the alleged offending portion in the context of the trial court's whole charge." *State v. Parker*, 142 N.H. 319, 324, 702 A.2d 306, 309 (1997) (quotation omitted). "Reversal is not warranted unless the charge, as a whole, does not fairly cover the issues of law of the case." *State v. Pinardville Athletic Club*, 134 N.H. 462, 467, 594 A.2d 1284, 1287 (1991) (quotation omitted).

■ Read in context of the entire jury charge, the trial court's instruction did not, as the defendant contends, imply that the jury "*must* find the defendant guilty if they found the uncorroborated testimony of the victim credible." Prior to instructing the jury on corroboration, the trial judge defined "proof beyond a reasonable doubt," and directed the jury to consider each individual indictment separately under that standard. Moreover, the trial judge instructed the jury to find the defendant not guilty on any indictment if the State failed to meet its burden of proof on any element of that indictment. Thus, in context the court's instruction that the victim's uncorroborated testimony was sufficient to prove the State's case did not mean that the jury *should* convict if they believed her testimony, but that they *could* convict on the basis of her uncorroborated testimony and all the other evidence in the case. This is merely a correct statement of law. *Cf. State v. Hardy*, 120 N.H. 552, 554, 419 A.2d 398, 400 (1980) (uncorroborated testimony of victim sufficient to sustain conviction on charge of attempt to commit aggravated sexual assault).

*IV. Prior Bad Acts*

The defendant finally contends that the trial court improperly admitted evidence of uncharged bad acts under New Hampshire

Rule of Evidence 404(b). In light of our disposition on the first issue, however, we find it unlikely that this precise scenario will reappear on remand. Thus, we find that guidance in addition to our prior Rule 404(b) cases would not be helpful to the parties and trial court on remand.

*Reversed in part; vacated in part; and remanded.*

HORTON J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: I respectfully disagree with the majority's presumption of prosecutorial vindictiveness and its disregard of evidence sufficient to rebut the presumption. Accordingly, I write separately to explain what I believe to be the proper analysis. For the reasons that follow, I would hold that the defendant failed to invoke a presumption of prosecutorial vindictiveness, and that even if he made the requisite showing to trigger the presumption, the State effectively rebutted it. I would affirm the defendant's convictions.

The majority concludes that a presumption of vindictiveness arises because the prosecutor brought 104 additional indictments after the defendant successfully appealed his convictions, and thereby increased the defendant's potential punishment on retrial. To reach this conclusion, the majority relies on *State v. Goding*, 128 N.H. 267, 513 A.2d 325 (1986), a case in which a defendant was convicted of an offense, elected a trial *de novo* in superior court, and was charged with a more serious offense based on the same conduct originally prosecuted. In *Goding*, this court followed *Blackledge v. Perry*, 417 U.S. 21 (1974), and *Thigpen v. Roberts*, 468 U.S. 27 (1984), decisions squarely on point with *Goding*. *Thigpen* and *Blackledge* establish a rebuttable presumption of vindictiveness when a prosecutor "ups the ante" in response to a defendant's election to pursue a trial *de novo*. *Goding*, 128 N.H. at 272, 513 A.2d at 329. The majority applies the presumption of prosecutorial vindictiveness here, ignoring that the United States Supreme Court has not expanded the presumption beyond the limited factual context of *Thigpen* and *Blackledge*.

The doctrine of prosecutorial vindictiveness finds its origins in cases addressing claims of judicial vindictiveness. In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Court held that judicial vindictiveness is presumed where a defendant receives a harsher sentence from the same court on retrial following an appeal unless the trial judge articulates the basis for the increase, and the stated

reasons are logically related to conduct that occurred after the original sentencing. In *Colten v. Commonwealth of Kentucky*, 407 U.S. 104 (1972), no presumption arose because, among other reasons, the court that tried the case on remand was not the court that had been reversed by the appellate court. Somewhat similarly, in *Chaffin v. Stynchcombe*, 412 U.S. 17 (1973), no presumption arose because the defendant's sentence after retrial was imposed by a jury that was unaware of the original sentence. Therefore, when it is clear that the increased punishment is not due to the judge's desire to retaliate against the defendant for vindicating his rights on appeal, no presumption arises.

In *Blackledge*, the Court was faced with prosecutorial conduct sufficiently analogous to that of the trial judge in *Pearce* to warrant a presumption of vindictiveness. Before the Court adopted the presumption in circumstances where a prosecutor substituted a more serious charge prior to a trial *de novo*, however, it noted that "[t]he lesson that emerges from *Pearce*, *Colten*, and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27. Thus, the standard for invoking the presumption of prosecutorial vindictiveness was born.

Since *Blackledge*, however, the Court has not extended the presumption of prosecutorial vindictiveness beyond those cases in which a prosecutor substitutes a more serious charge after a defendant elects a trial *de novo*. *See generally United States v. Goodwin*, 457 U.S. 368 (1982) (prosecutor may seek felony indictment after defendant halts plea negotiations and requests jury trial on pending misdemeanor charges); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (prosecutor may threaten to bring additional charges with greater potential punishment unless defendant agrees to plea bargain). The reason for the Court's reticence was explained in *Goodwin*: "Given the severity of such a presumption, however — which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct — the Court has [applied it] only in cases in which a reasonable likelihood of vindictiveness exists." *Goodwin*, 457 U.S. at 373. The circumstances must warrant the supposition that the prosecutor's decision to "up the ante" was in response to the defendant's election to pursue an appeal instead of being founded on legitimate factors. *See Thigpen*, 468 U.S. at 30; *Blackledge*, 417 U.S. at 27-28.

Guided by this context-specific precedent, we have been called upon to determine whether the presumption of prosecutorial vin-

dictiveness should be extended beyond its single area of application to cases in which a prosecutor, in response to a reversal of a defendant's convictions, decides for tactical purposes to seek additional charges. The fundamental difference between this case and *Blackledge* is that here an appellate court eviscerated the trial strategy on which the prosecutor's initial charging decision was based. Because there was no such glaring intervening force between the first and second trials in *Blackledge*, a specter of vindictiveness arose. While here there is certainly an opportunity for vindictiveness that should be taken into consideration, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin*, 457 U.S. at 384. The law is plain that an increased punishment upon retrial after appeal does not necessarily justify the assumption that the prosecutor was motivated by vindictiveness. *Blackledge*, 417 U.S. at 27.

Ordinarily, the proper course would be to balance the competing interests of prosecutorial discretion and the free exercise of legal rights in view of the procedural and factual context. That task is unnecessary, however, because the Fifth Circuit Court of Appeals has formulated the proper analytical framework in a case strikingly similar to the case at hand. *See United States v. Krezdorn*, 718 F.2d 1360 (5th Cir. 1983) (en banc), *cert. denied*, 465 U.S. 1066 (1984). I would follow *Krezdorn* because it is sound and reasonable, and I would hold that no presumption of vindictiveness arises in this case.

In *Krezdorn*, the defendant was indicted on five counts of forgery and was convicted of four of them. His convictions were reversed on appeal because the trial court, contrary to Federal Rule of Evidence 404(b), admitted evidence of thirty-two uncharged acts of forgery identical to the charged acts. The appeals court indicated that the uncharged forgeries would have been admissible under the "plan or scheme" exception to Rule 404(b) if the government had charged a conspiracy. On remand, the prosecution reindicted the defendant on four counts of forgery, and added a conspiracy indictment. The conspiracy charge increased the defendant's potential punishment by five years of imprisonment and $10,000 in fines. The defendant moved to dismiss, alleging prosecutorial vindictiveness, and the trial court granted the motion. On rehearing *en banc*, the Fifth Circuit reversed. The United States Supreme Court denied *certiorari*.

The Fifth Circuit's decision is compelling. The court began by tracing the judicial history of prosecutorial vindictiveness and concluded that it is "a mistake to measure cases in this area of the law against fixed gauges." *Krezdorn*, 718 F.2d at 1364. To determine

whether prosecutorial vindictiveness was present in the context of Krezdorn's case, the court crafted the following test.

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, [assuming no presumption arose,] the prosecutor may offer proof . . . that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion.

*Krezdorn*, 718 F.2d at 1365. This approach is prudent because it does not hastily presume vindictiveness simply because the defendant faces additional charges and greater potential punishment. The test to decide whether a presumption arises is not wooden; it requires a *reasonable* likelihood of vindictiveness in view of the circumstances. To discern the reasonableness of a prosecutor's conduct, we should, as *Krezdorn* requires, consider his actions objectively in the context of the entire proceedings.

In *Krezdorn*, no presumption was created because the prosecutor's primary purpose in adding the conspiracy charge was to take a course indicated by the appellate court's evidentiary decision, and the prosecutor represented to the trial court that he did not believe that the defendant would receive a harsher sentence on retrial. *See id.* These factors, reasoned the court, should have alerted the defendant that the prosecutor's actions were taken in response to the appellate decision reversing his convictions on evidentiary

grounds. *See id.* The court was mindful to avoid confusing the evidentiary principle vindicated on appeal, that the defendant should not have been convicted based on improper evidence, and the exercise of prosecutorial discretion to charge criminal conduct. *See id.*

The objective circumstances presented by the instant appeal are not distinguishable from *Krezdorn.* The prosecutor, in the first trial, obtained a pretrial ruling that permitted him to admit evidence of the defendant's uncharged sexual assaults against the same victim. *State v. Marti,* 140 N.H. 692, 693, 672 A.2d 709, 710 (1996). The prosecutor, therefore, intended to and did admit evidence of hundreds of uncharged criminal acts. We reversed and remanded, holding that under both New Hampshire Rules of Evidence 403 and 404(b), the probative value of the evidence was substantially outweighed by its prejudicial effect. *See id.* at 694-95, 672 A.2d at 711. The crux of our opinion was that the uncharged acts effectively obscured the charged acts and may have tempted the jury to convict on the basis of the former. *See id.* at 695, 672 A.2d at 711.

In response to our holding, the prosecutor reindicted the defendant and charged him with the prior sexual assaults we had found objectionable because they were uncharged. The prosecutor, intending once again to place evidence of these crimes before the jury, then moved to consolidate the charges, and the court granted the motion. The defendant moved to dismiss, claiming the prosecutor was motivated by vindictiveness. The prosecutor, in his objection, argued that our decision required him to charge the numerous sexual assaults in order to demonstrate to the jury "the defendant's extraordinary history of sexual abuse on his daughter." Indeed, according to the defendant, the prosecutor stated at a pretrial conference that "if the Supreme Court would not let him introduce the prior, uncharged acts, then he would charge the acts." The prosecutor further argued that he would not seek a harsher sentence were the defendant convicted. In light of these circumstances, and the lack of any evidence of actual vindictiveness, the court rejected the vindictiveness claim.

As the Fifth Circuit held in *Krezdorn,* I would conclude that no presumption of vindictiveness was created by the prosecutor's *legitimate* efforts to avoid the evidentiary obstacle we placed before him. The only distinction between the cases is that in *Krezdorn* one conspiracy charge was added, permitting the prosecutor to introduce evidence of thirty-two additional criminal acts, while here 104 charges were added for the purpose of admitting evidence of 104 additional criminal acts. This difference is immaterial, however,

because the rationale supporting the additional conspiracy charge in *Krezdorn* equally supports the additional 104 sexual assault charges in this case. The number of the charges is merely a function of the defendant's lengthy pattern of sexual assault, the prosecutor's unwavering intention to place evidence of that before the jury, and our holding reversing the evidentiary ruling that allowed the prosecutor to achieve his purpose without having to exercise his discretion in favor of charging additional counts. Absent an impure motive on the part of the prosecutor, a criminal defendant is susceptible of being charged for all of his crimes, regardless of whether the number of those crimes is shocking. Thus, nothing would have prohibited the prosecutor from charging all of the sexual assaults in the first trial if he had not obtained the evidentiary ruling favorable to his strategy.

The majority should not so readily apply a presumption of vindictiveness because it will, in the future, threaten to bind prosecutors to their original charging decisions after the bases for those decisions are undercut on appeal, and when an alternative and legitimate approach is within grasp. We have been cautioned against extension of the presumption because it may, as in this case, "operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct." *Goodwin*, 457 U.S. at 373.

Finally, I recognize that today's decision is based on the New Hampshire Constitution. That alone, however, should not encourage the majority to depart from sound and established federal law regarding prosecutorial vindictiveness. Such would be inconsistent with the majority's heavy reliance on *Goding*, a case we decided under federal law.

Even if the majority can properly apply a presumption of vindictiveness in this case, there is abundant evidence on the record before us to rebut it. As I have discussed above, events occurring after the original charging decision altered the considerations underlying the initial exercise of prosecutorial discretion. *See Krezdorn*, 718 F.2d at 1365. On remand, the prosecutor could not have pursued his original trial strategy to make the jury aware of the defendant's history of sexually abusing his daughter.

At most, the record reflects the prosecutor's frustration with our decision reversing the defendant's convictions. That frustration, however, cannot serve as the basis for a finding of prosecutorial vindictiveness against the defendant. Accordingly, I respectfully dissent.

THAYER, J., joins in the dissent.